## BROWN *v*. THE STATE.

CRIMINAL LAW. — *Evidence Excluded.—Bill of Exceptions.*—Evidence offered and excluded must be set out at length in a proper bill of exceptions, to present any question to the Supreme Court, regarding such exclusion.

SAME.—*Competency of Juror.—Opinion of.—Challenge for Cause.*—Two persons, jointly indicted for murder, having severed in their defence, and each charging the other as alone being guilty, one of them was tried, and then the other was put upon trial. A juror called to try the latter cause, on his examination as to his competency to sit as a juror, answered that he had read newspaper reports of the evidence given on the trial of the other defendant, including the testimony of each of the defendants, and had talked with his neighbors about the two cases, and had formed and expressed an opinion as to the guilt or innocence of the defendant ; that ·his opinion was quite fixed, but would readily yield, if the evidence to be given should be *materially different* from what he had read; but that, if it should be the same, he would be somewhat influenced by his opinion already formed and expressed.

*Held*, that the juror was clearly incompetent, on challenge by the defendant for cause.

SAME.—*Error in Overruling Challenge for Cause not Cured by use of Peremptory Challenge.*—Where, in such a cause, a challenge by the defendant for cause is erroneously overruled, the error is not cured by reason of

the facts, that such juror was prevented from serving on the jury by the peremptory challenge of the defendant, and that the jury was empanelled without exhausting the defendant's peremptory challenges.

From the Marion Criminal Circuit Court.

*J. M. Cropsey, C. M. Cooper, L. Ritter, L. C. Walker* and *E. F. Ritter,* for appellant.

*D. P. Baldwin,* Attorney General, and *J. B. Elam,* Prosecuting Attorney, for the State.

Howk, J.—In this case, the appellant and one Joseph Wade were jointly indicted for murder in the first degree. The indictment charged, that said Wade and the appellant, on the 6th day of February, 1880, at and in the county of Marion, in this State, did unlawfully, feloniously, purposely and with premeditated malice, kill and murder John Brown, etc.

The appellant severed in her defence, and for her plea said that she was not guilty as charged in the indictment. The issues joined were tried by a jury, and a verdict was returned, finding the appellant guilty of murder in the first degree, as charged in the indictment, and that she suffer death therefor. Her motion for a new trial having been overruled, and her exception entered to this ruling, the court rendered judgment on the verdict, that she suffer death; and from this judgment she has appealed to this court.

Upon the record of this cause filed in this court, the appellant has made the following assignment of errors:

"*First.* The court below erred in being guilty of misconduct in ordering the arrest and imprisonment of a witness for the defendant, in open court, while testifying before said court, in said cause, pending the motion for a new trial;

"*Second.* The court erred in overruling the defendant's motion for a new trial."

The important and controlling questions in this case arise under the alleged error of the court, in overruling the appellant's motion for a new trial. In this motion, a number of causes were assigned for such new trial. Without setting out these causes in a connected form, we will consider and decide those questions arising thereunder, which the appellant's counsel have presented and discussed in their able and exhaustive brief of this case.

Before considering any of the questions presented for decision in this case, we deem it necessary to a proper understanding of those questions, and of our rulings thereon, that we should first give a summary, at least, of the undisputed facts of the case, as we gather the same from the record. The appellant, Mary A. Brown, was the wife of John Brown, named in the indictment, and she had been his wife for a number of years prior to his death. He was about fifty-two years old when he was killed, and his wife, the appellant, was about twenty years younger than he. They had three children, a son aged twelve years, and two daughters aged respectively ten and four years. They lived on a farm of forty acres, in Marion county, owned by him, about four miles distant from the city of Indianapolis. He was the owner, also, of two houses and lots in said city, and of personal property worth about nine hundred dollars.

For more than one year prior to his death, John Brown had been confined in the Indiana State-Prison North, under a judgment of the court below; and his term of imprisonment having expired, he had returned to his home and family, about the 1st day of January, 1880. About four months before that time, and while John Brown was so confined in the northern prison, the appellant's co-defendant, Joseph Wade, who was then about twenty-eight years of age, became a member of her household, nominally as a hired man, but actually as her paramour; and he contin-

ued to live with the family of John Brown, after his return home from the prison and until his death. On the evening of the 7th day of February, 1880, the appellant sent her two older children to a neighbor's house, to play with some children of about their own age, telling them that she and the youngest child and Wade would go after them. After the two older children had gone, on that same evening, and while there was no one present but the appellant, her youngest child, and her co-defendant, Joseph Wade, her husband, John Brown, was killed and murdered either by the appellant or by said Wade, or by both of them, by crushing his skull with a mallet, club or some other blunt instrument. His body was then placed in a buggy and carried about two and a half miles from his residence, and left in a public highway, either by the appellant or by said Joseph Wade, or by both of them; and the horse and buggy were left in the highway, where they and the dead body of John Brown were subsequently found, on the same evening.

With the facts before us, clearly appearing in the record of this cause, we must decline to disturb the verdict of the jury, on the evidence.

It is claimed by the appellant, that the court erred in excluding from the jury about twenty letters, written by her children, in her name and at her dictation, to her husband, John Brown, while he was confined in the northern prison. The record shows that the State objected to the admission in evidence of these letters, when offered by the appellant, upon the ground that they were incompetent, irrelevant and immaterial; that the court sustained the State's objection, and that the appellant excepted to this decision. But the offered letters were not made part of the record, and we do not and can not know what were their contents. Without inspection of the letters, it is difficult for us to see how we are to determine that they

were competent, relevant and material, and that the court had erred in deciding otherwise. It is manifest that this question has not been properly saved in the record; for, in the absence from the record of the offered letters, it is impossible for this court to determine whether they were competent or incompetent, relevant or irrelevant, or material or immaterial. Evidence offered and excluded must be made a part of the record, by setting it out at length in a proper bill of exceptions; otherwise the decision of the court, in the exclusion of such evidence, can not be reviewed in this court.

The appellant complains of the action or decision of the court, in overruling her challenge for cause to each of the following persons, who were subsequently sworn as jurors to try her case, to wit, H. A. Haverstick, Benjamin Tyner, Jacob Stinemeyer and Jackson Dawson. In section 84 of the criminal code, it is provided as follows:

"Section 84. When the jurors are called, each may be examined on oath by either party, whether he has formed or expressed an opinion of the guilt or innocence of the defendant, and upon such examination and other questions put by leave, the court may determine upon the competency of the juror. Any juror is incompetent who has formed or expressed an opinion of the guilt or innocence of the defendant." 2 R. S. 1876, p. 393.

Each one of the above named jurors, it appears from the record, was examined on oath touching his qualifications as a juror in this cause; and, upon such examination, each one of them was challenged for cause by the appellant, and, over her objection and exception, her challenge was overruled, and each of them was sworn as a juror to try the case. In this connection, we set out the examination of Benjamin Tyner, one of the above named jurors, as it appears in the record, as follows:

"Examined by defendant. I was in the room this

morning, and heard the statement made of this case, and I understood, the case that I am about to try. I have read accounts of this murder, and I have had conversations with my neighbors and others on this question. I reside in Washington township, and have heretofore held the title of esquire. I read accounts of the testimony in the Wade trial,—I think some of it in the Journal, and some in the News, and some in the Republican. I do not think any of those papers stated any opinion in regard to the guilt or innocence of the person arrested.

" Question. From what you read and heard, or by conversations with others, did you form any opinion as to the guilt or innocence of the defendant?

" Ans. Yes, sir.

" Ques. Was that opinion of a firm nature?

"Ans. Yes, sir.

" Ques. Would it require considerable testimony to remove such an opinion as you have formed?

"Ans. Yes, sir, it would.

" Ques. Do you believe that the opinion you have formed upon the evidence you got was the correct opinion?

"Ans. From the information I got, yes, sir.

" Ques. Have you served on a jury in any of the courts in this county, for the last twelve months?

"Ans. No, sir.

" Ques. Have you ever served in a case in this criminal court?

"Ans. Yes, sir.

" Ques. How long since was it?

"Ans. I think during Judge Test's time.

" Ques. Have you served in a case where the person was charged with murder?

"Ans. Yes, sir.

" Ques. What case was it?

"Ans. The last case was Louis Lynn. He was charged with killing Hi. Minnick. I served on a case a good many years ago.

" The defendant interposes a challenge for cause.

" Cross-examined by the State:

" Ques. Did you say you had expressed an opinion?

"Ans. Yes, sir, I think so.

" Ques. I will ask you if the opinion you have formed is of such a nature that you could not lay it aside and try this case fairly and impartially upon the evidence as given here by the witnesses, and the law as given you by the court?

"Ans. I think not. The evidence would have to be *materially different* from what I read, or probably I would have my first opinion.

" Ques. Can you lay aside this opinion you have formed, and try the case under the law and the evidence, as you would hear them here? Is that opinion such as would yield readily to the evidence, and is that opinion you have formed heretofore one that will not influence your verdict at all?

"Ans. I think not. The first impression would be apt to hang to me *pretty rigidly*, and if it would turn out, in forming my verdict, that I believe the law and evidence as given here, as I understood it in the former trial,—

" The Court,—interrupting. What you mean is, if the testimony here turns out to be what you read, you would come to the same conclusion as you did then?

"Ans. Yes, sir.

" The Court. Is your mind in such a condition that you could lay aside your opinions, and try the case according to the law and the evidence?

"Ans. Yes, sir.

" The Court. And do you think you could arrive at a different conclusion, without being bothered by the former conclusion?

"Ans. Yes, sir; I think, possibly, my first impression might have some influence; but I think I could lay it aside.

" The Court. Did you ever talk to any of the witnesses, or any one else, in regard to this, who knew the facts?

"Ans. I don't think I did; if I did, I don't know.

" The Court. The opinion you have is formed solely on newspaper accounts and common rumor?

"Ans. I have talked with some of the witnesses, but not upon the subject.

" Re-examined by the defendant:.

" Ques. Are you certain that you could lay aside those first impressions?

"Ans. I do not know as I could say I could. I think I could.

" The Court. What is your best impression about it? |.

"Ans. My best judgment is, that I could.

" Examined by the defendant:

" Ques. You say it is your best judgment, but you are not positive?

"Ans. I am not positive. If you will allow me to explain, for instance: the evidence would be so nearly the same as I have read, that it would be pretty hard for me to throw away the former opinion, and the first impression I had; and, if it is not *materially different*, it might have some influence.

" The Court. I want your answer in regard to the state of your mind, if the testimony would turn out to be different from what you read. Could you take the testimony as it was given here, and decide upon that, without being influenced by your former opinion?

"Ans. I think I can.

" The Court. Do you think there is any question about it?

"Ans. No, sir, I don't think there is.

" Examined by defendant. (Answer read.)

" Ques. Do you stand by that answer?

"Ans. There is one word in there,—there is a little clause there, where it says, that if the evidence should be materially different, it might make some impression. I say, if it was materially different, I would be governed by the latter evidence entirely.

"The Court. If it should be nearly the same?

"Ans. The former might have some influence.

"The court overrules the challenge of the defendant, to which ruling of the court the defendant, at the time, excepted."

We give from the record, also, the examination under oath of Jackson Dawson, one of the above named jurors, as follows:

"Examined by the defendant.

"I reside in Washington township. I have read of the case before, in the daily papers of Indianapolis, and I have talked to my neighbors about it. I have not talked to any member in the present panel in regard to it, that I know of. I have formed and expressed an opinion as to the guilt or innocence of the person on trial. I think that opinion would be of a firm nature. I believe that the judgment I came to was true, and it would require considerable evidence to remove that opinion.

"Ques. You think, then, you could not give an impartial hearing to the defendant, on that account?

"Ans. I suppose I might.

"Ques. But you think it would be doubtful,—you have a doubt about being able to give it so impartial a hearing as if you had no impression at all?

"Ans. I think I could.

"Ques. You think you could give a perfectly impartial hearing, could you?

"Ans. I think I could, if the evidence would be different from what I read.

"Ques. Did you read the evidence in the Wade case?

"Ans. Yes, sir.

" Ques. Did you read the testimony of Wade upon that trial?

"Ans. I believe I did, pretty much all of it.

" Ques. Did you read the statement of Mrs. Brown upon that trial?

"Ans. Yes, sir.

" Ques. And the evidence of the other witnesses?

"Ans. I think I read it most all.

" Ques. Were you in attendance upon the trial any?

"Ans. No, sir.

" Ques. Did you talk with persons who had been here, and heard the testimony?

"Ans. No, sir; not particularly, I didn't. I got my information all out of the papers.

" Ques. To change your opinion, it would require evidence *materially different* from what was developed, as you understood it, in that trial?

"Ans. Yes, sir.

" Ques. And if the evidence should appear to be the same, your opinion would be unchanged?

"Ans. If the evidence would be the same, my opinion would be the same.

" The defendant interposes a challenge for cause.

"The Court. As I understand you, you have an opinion, if the evidence is as you found it, in the accounts you read?

"Ans. Yes, sir.

" The Court. If you were sworn as a juror, could you lay aside that opinion, and try the case as impartially upon the law and evidence, as you would get it here, as if you had never formed that opinion?

"Ans. That is the way I aimed to.

" The Court. You say you could do that?

"Ans. I think I can.

" The Court. Do you have any doubt about it?

"Ans. Not much. It might pull me over a little.

" Ques. Have you sat upon a jury in any of the courts of this county, within the last year?

"Ans. No, sir.

" Ques. Have you ever been on a jury in the criminal court?

"Ans. No, sir; I don't think I have. I have been here several times, but I have never served.

" The Court. I think that he is a competent juror, and within the rule, and if the State does not concur in the objection, I will let him stay.

" The State not concurring in the objection, the court overrules the defendant's challenge, to which ruling the defendant, at the time, excepts."

The foregoing examinations under oath of the jurors, Benjamin Tyner and Jackson Dawson, will serve to show, very clearly as it seems to us, not only the absolute incompetency of each of the said jurors, under the law, to act as such on the trial of the appellant, but also the erroneous views of the court, and the erroneous grounds of its decisions, in overruling the appellant's challenges for cause, to each of said jurors. Opinions had been formed and expressed by each of the jurors, as to the guilt or innocence of the appellant of the high crime wherewith she was charged. These opinions were not formed upon common rumor; but these jurors had read the evidence adduced upon the trial of the appellant's co-defendant, Joseph Wade, as published in the daily newspapers of the city of Indianapolis, and upon that evidence they had formed and expressed their opinions. Upon the trial of Wade, both he and the appellant in this case had testified, as witnesses, and, under the sanction of their respective oaths, had each given an account of the cold-blooded and atrocious murder of John Brown, committed in their presence only, by one or both of them, and for which they were then jointly indicted. These sworn accounts of the

crime, thus given by the only parties who were present at its commission, and who had actual personal knowledge of all its horrible details, were published at length and almost literally in said daily newspapers, and had been read by these jurors; and from these sworn accounts of these parties, in which the murder of John Brown was fully admitted, but each charging the crime upon the other, each of these jurors had formed and expressed an opinion as to the guilt or innocence of the appellant, of the same murder for which Wade had been tried and convicted, and she was about to be put on trial.

Of course it is well understood, and is recognized law in this State, that it is not every opinion which a man may form, or even express, in regard to the guilt or innocence of a person charged with crime, which will disqualify or render him incompetent to act as a juror on the trial of such person. This question has often been the subject of consideration in this court. In the recent case of *Guetig* v. *The State*, 66 Ind. 94, it was said by BIDDLE, J., speaking for the court: "It can not be held, therefore, that any or every light, transient or frivolous opinion, formed from the floating news of the day, which are often as changeable as the flying clouds, as to the guilt or innocence of a defend-ant, should render a juror incompetent to try his case. An opinion, to disqualify a juror, should be founded on what the juror supposes to be facts, and have such tenacity as would not readily yield to contrary evidence, and make such an impression upon the juror as would probably influence him after hearing the evidence in the case." And see, also, the authorities cited in the *Guetig* case.

Under the law, however guilty the appellant might be, she had and has a clear and undoubted right to be tried by an impartial jury of competent jurors. We are of the opinion, that the jurors, Tyner and Dawson, were clearly shown, by their examinations under oath, to be incompe-

tent jurors in this case, within the meaning of the statute as construed by this court. From their reading of the evidence in the previous trial of the appellant's co-defendant, Joseph Wade, not alone of the witnesses, but also of both the defendants, as published in the daily newspapers, they had formed and expressed opinions, in regard to the appellant's guilt or innocence, of a "firm nature," which would be apt to hang to them "pretty rigidly," or might "pull them over a little," and which evidently would control them in their verdict, if the evidence in the appellant's case should prove to be substantially the same as what they had read as the evidence in the Wade case. They said, in substance, that, if the evidence should be *materially different,* in the appellant's case, from what they had read as the evidence in the Wade case, they thought they could lay aside the opinions they had formed and expressed, and give the appellant a fair trial. It seems to us, however, that, under the law, the appellant was entitled to more than this; that she had a clear legal title to an impartial trial by a jury of competent jurors, who would not be prejudiced against her by their opinions, previously formed and expressed, in any possible event, and even though the evidence should prove to be substantially or identically the same, in her case, as what the jurors had read as the evidence in the Wade case. This right was denied the appellant, we think, by the decisions of the court, in overruling her challenges for cause to the jurors, Benjamin Tyner and Jackson Dawson.

Another cause assigned for a new trial by the appellant, and elaborately discussed by her counsel, was certain alleged misconduct of the jury trying the case. As the question already decided will necessarily reverse the judgment below, and lead to a new trial of the case, in which the alleged misconduct will hardly be repeated, we will not extend this opinion in the consider-

ation and decision of the points made by counsel in regard to such misconduct. Some other questions have also been argued by counsel, which we need not and do not decide.

The judgment is reversed, and the cause is remanded with instructions to sustain the appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.

## ON PETITION FOR A REHEARING.

Howk, J.—On the 11th day of November, 1880, an opinion was filed by this court, reversing the judgment of the Marion Criminal Circuit Court in this cause, and remanding the case for a new trial. On the 23d day of November, 1880, a petition for a rehearing of the cause was filed by the Attorney General, on behalf and in the name of the State of Indiana.

As stated in the petition, the rehearing is asked for, in this cause, " for the reason that the court, in considering the case, mistook the contents of the voluminous record filed therein, and decided the case, supposing the record to show that incompetent jurors tried the appellant, when in fact the record showed that the jurors mentioned in the opinion of the court did not act as jurors in said cause, nor in any way participate in its decision, nor does the record show any injury to the appellant from the ruling upon her challenges to said jurors."

The criminal code of this State has made no provision for the filing of a petition for a rehearing, by either the defendant or the State, in a criminal cause. In the case of *Clem* v. *The State*, 42 Ind. 420, the power of this court to grant the State a rehearing in a criminal case was denied by the appellant; but the point was not then decided, and it is still an open question. We do not intend to decide this question now, although it is fairly presented by the

petition of the State, in the case at bar; and we advert to it now, for the purpose of expressly waiving the question, and of stating that our action in this regard is not to be considered as decisive of such question.

In the petition for a rehearing, the record of this cause is aptly described as a " voluminous record," as it contained in all about seventeen hundred pages of legal-cap manuscript.  As voluminous and formidable as this record appeared to be, we were not apprehensive of mistaking its contents, and the questions presented and intended to be presented therein and thereby for the decision of this court, for the reason that the appellant and the appellee were alike represented by able and skilful attorneys, distinguished not alone for their legal learning and acumen, but also for their courtesy and fairness to each other and to the courts in which they practised.  For the purpose of ascertaining the matters complained of as erroneous by the appellant, we looked to the elaborate brief filed by her counsel in this court, and not to the record of the cause; because it often happens, that questions saved, as errors, on the trial of a case, and presented by the record, are abandoned, and not insisted upon, by the party, on appeal to this court.

As we stated in our opinion, in this case, the appellant complained of the action or decision of the court in overruling her challenge for cause to each one of four named jurors; and much of the brief of her counsel was devoted to the discussion of these decisions, which she had assigned as cause for a new trial in her motion therefor.  The examinations under oath of these four jurors, by the court and counsel, in regard to their competency as jurors in this case, and the court's decisions in overruling the appellant's challenges of said jurors for cause, were set out at length in the transcript filed in this court.  The examinations of two of these jurors, namely, Benjamin Tyner

and Jackson Dawson, showed very clearly, as it seemed to us, that, as to each of them, the court had erred in over-ruling the appellant's challenges for cause.

In the well-considered and exhaustive brief of this cause, filed by the counsel for the State upon the original submission of the case for our decision, the following language was used:

"As to the rulings upon the competency of jurors, we think the subject was exhausted in the second appeal of *Guetig* v. *The State*, and make no argument further than to cite an important and undoubtedly correct case, applicable to hypothetical opinions, and which has some application to the cases of several jurymen in this case. *Burk* v. *The State*, 27 Ind. 430. The court will understand the difficulty of getting an exact expression from a juror, as to the state of his mind, and the danger a man, not careful of his answers and not accustomed to exact use of language, is in of making absurd or contradictory replies; but, upon reading the whole examination of each juror, we think it clearly appears that they were each competent under the rules settled in *Scranton* v. *Stewart*, 52 Ind. 68,. *Guetig* v. *The State*, and other cases."

This is the entire argument of the learned counsel of the State, upon the question of the competency of the jurors and the court's rulings thereon, on the original submission of this case to this court. It is manifest there-from, as it seems to us, that the counsel then thought that this question was fairly saved in and presented by the record of this cause, and must be decided. Indeed, we think that the argument of counsel above quoted was fairly equivalent to an express submission, by the State, of the question of the court's rulings upon the competency of the jurors, to this court for decision, upon "the whole examination of each juror," and the authorities cited. This court accordingly considered this question, and decided

that two of the jurors, Tyner and Dawson, were incompetent under the statute, as construed by the court, and that, as to each of them, the trial court had, in our opinion, clearly erred in overruling the appellant's challenge for cause.

It will be observed, that, in its petition for a rehearing, the State has not questioned the correctness of this decision. But, for the first time, in this petition, the State by its counsel makes the point, that the decisions of the court, in overruling the appellant's challenges for cause, worked no injury to the appellant, and were therefore harmless, because the record elsewhere showed that the jurors, Tyner and Dawson, did not act as jurors in said cause, nor in any way participate in its decision, and it may be fairly inferred from the record, that she had not exhausted the number of peremptory challenges allowed to her by law, when the jury was sworn to try the case. In other words, we are asked to grant a rehearing of this cause, in order that the State, by its counsel, may present for the first time a question for our decision, which question counsel ought to have presented on the original submission of the cause, but which they failed to present, for the reason, as it might be supposed, that they " mistook the contents of the voluminous record filed herein."

In the case of *Yater* v. *Mullen,* 24 Ind. 277, it was said by FRAZER, J., speaking for the court: " It is, by the well settled practice of this court, too late to present a question for the first time on a petition for rehearing." This rule of practice has been recognized and acted upon by this court, in a number of more recent cases. *Heavenridge* v. *Mondy,* 34 Ind. 28; *Brooks* v. *Harris,* 42 Ind. 177; and *Graeter* v. *Williams,* 55 Ind. 461.

But, waiving this point, the question remains, have the rights and interests of the State, in the prosecution of the appellant, been prejudiced in any manner or to any

extent by the fact, assuming it to be the fact, that either the court or counsel, or perhaps both court and counsel, "mistook the contents of the voluminous record filed herein?" In other words, if the alleged mistake had not occurred, would or could the decision of this court, upon the question adjudged in the original opinion, have been materially different from what it was and is now? These questions, we think, must be answered in the negative.

We may fairly assume, as the contrary is not shown by the record of this cause, that after the court's acceptance of the jurors, Tyner and Dawson, as competent jurors under the law, they were excluded from the jury upon the appellant's peremptory challenges. It has been well said, that peremptory challenges are given by "the abundant humanity of the law," to enable a prisoner to get rid of an obnoxious juror, as to whose competency there might be no valid objection. But, whatever may have been the legislative intent in providing that the defendant, in a prosecution for a capital offence, " may challenge peremptorily twenty jurors," it can not be correctly said, as it seems to us, that these peremptory challenges were allowed for the purpose of correcting the errors of the trial court, in overruling the defendant's challenges for cause. There can be no doubt, we think, that the appellant was prejudiced and injured by the decisions of the court in overruling her challenges for cause as to the jurors, Tyner and Dawson, in this, that she was thereby compelled, as we assume, to use two of the peremptory challenges allowed her by law for other purposes, to relieve herself, as far as she could, from the erroneous rulings of the court on her challenges for cause.

The erroneous decisions of the court in overruling the appellant's challenges for cause as to the jurors, Tyner and Dawson, were not cured or obviated, in our opinion, by the subsequent exclusion of said jurors from the jury upon

her peremptory challenge, although it appeared that she had not exhausted her peremptory challenges, when the jury was accepted and sworn to try the case. It was so decided by the Supreme Court of Virginia, in the case of *Dowdy* v. *Commonwealth*, 9 Grat. 727, upon the authority of *Lithgow* v. *Commonwealth*, 2 Va. Cas. 297, and *Sprouce* v. *Commonwealth*, 2 Va. Cas. 375.

In the case of *The People* v. *Bodine*, 1 Den. 281, it was decided by the Supreme Court of New York, that the fact that the defendant, in a criminal cause, did not avail himself, as he might, of a peremptory challenge, to exclude a juror who had been found indifferent upon a challenge for cause, would not prevent him from taking advantage of an error committed on the trial of the challenge for cause, although it appeared that his peremptory challenges had not been exhausted, when the empanelling of the jury was completed; and that, in such a case, the defendant was entitled to have his challenges for cause determined according to law, and to make or withhold his peremptory challenges, according to his pleasure. In the opinion of the court in that case, it was said: " In no case is the prisoner bound to resort to his right to make peremptory challenges. It is armor which he may wear or decline at his pleasure. It is for his own exclusive consideration and decision, and the court has no right to interfere with his determination. Nor should the prisoner's refusal to make use of her peremptory challenges, as she might have done, preclude her from raising objections to what was done by the judge: and if, in truth, errors were committed, I do not see that it is less our duty to correct them, than it would have been if the prisoner had fully exhausted her peremptory challenges. The use, or disuse, of that right, I regard as a fact wholly immaterial to the question now before the court, and one which can not, rightfully, exert the slightest influence upon the decision to be made." Elsewhere, in

the same opinion, it was also said, that the challenge for cause was not " an idle ceremony which the judge may, in any case, overlook or disregard. He is bound, *ex debito justitiæ*, to receive the challenge and dispose of it as the law requires. He certainly would not be allowed to disregard a challenge for cause, and turn the party making it over to his peremptory challenges; nor, in my opinion, can the fact, that the party still has peremptory challenges at his command, deprive him of any redress which the law would otherwise give, for a violation of his right."

We are aware that there are respectable authorities which would sustain a different conclusion from the one we have reached, on the subject now under consideration. It seems to us, however, that our decision is fully in harmony with, and sustained by, the criminal code of this State, and that its tendency will be to secure to all persons charged with crime a fair trial by an impartial jury of competent jurors, under the law.

The petition for a rehearing is overruled.