Carl Vincent HENRY, Defendant Below,
Appellant,

v.

STATE of Delaware, Plaintiff Below,
Appellee.

Supreme Court of Delaware.

Nov. 9, 1972.

Henry A. Wise, Jr., Asst. Public Defender, Wilmington, for appellant.

Richard R. Wier, Jr., State Prosecutor, Wilmington, for the State.

WOLCOTT, Chief Justice, and CAREY and HERRMANN, Justices, sitting.

WOLCOTT, Chief Justice:

This is an appeal from a conviction before a jury of assault with intent to commit murder, possession of a firearm during the commission of a felony, and conspiracy. The appellant was sentenced to concurrent sentences of twenty, ten and two years on the respective convictions.

The appellant raises three points as grounds for reversal of his convictions, viz.:

1. Error was committed in denying appellant's motion for acquittal on the ground that the State's case was insufficient to support a finding of guilt;

2. Error was committed in charging as to contradictory statements when in fact there was no proof of contradictory statements, and

3. Error was committed in admitting into evidence prejudicial testimony of another shooting case.

The appellant seeks to have this appeal decided upon an extremely limited and straightened version of the facts put forward in a form most favorable to him. We may not do so, but must decide on the basis of the entire record taken in a light favorable to the State, since the jury obviously accepted the State's version. Those facts will be briefly stated.

At 1:28 a. m. on August 23, 1970, a Delaware State Trooper was shot in the back of the head by a shotgun blast at the Odessa police barracks. At the time the assailant was unknown and unidentified. The Trooper underwent emergency surgery and fortunately survived.

Residents living next to or near the barracks heard the shot and footsteps of an individual fleeing from the barracks toward High Street parallel to the street on which the barracks is located and one block to the north. One of the residents saw a single black male dressed in dark clothing running toward High Street following the shot.

Shortly thereafter, a car was heard to take off from High Street at a high rate of speed in the direction of Route 13. Later, evidence in the form of tire marks was found indicating a car had accelerated rapidly on High Street in the direction of Route 13. Shortly before the attack, a light green car carrying several black males passed a witness and, entering Odessa at a high speed, turned into High Street. Shortly after the attack several witnesses saw a light-colored station wagon going north in the southbound lane of Route 13 at an extremely high rate of speed.

About forty-five minutes after the shooting, the appellant appeared at a friend's home in Middletown. He knocked on the door and was admitted. The appellant was wearing a dashiki and dark pants. He was muddy, scratched and wearing only one shoe. Appellant told the friend that the people he was with had left him in the woods and that, "We shot a cop," and later: "Man, I shot a cop * * * I'm not lying." He then left and was observed to pick up what looked like a shotgun. He set out for the home of a friend, Wayne Marvel, who owned a light-colored station wagon.

Approximately two weeks after the shooting, the appellant, in response to a question from a friend, "You know, you shot the cop," replied, "Yes, I shot him." After his arrest, the appellant, while in jail, had a conversation with his cellmate who testified as follows:

"Five days, around five days when I was there he said that he shot a State Trooper or something like that . . . ."

"Q. Did he say he shot the cop?

"A. Yes.

"Q. How did he say that?

"A. He said, 'I shot the cop'.

"Q. Go on, what else did he tell you?

"A. He said that he was going to—after that he said he throwed the gun away and he went home."

.     .     .     .     .     .

"Q. Did Carl Vincent Henry tell you why he shot the State Trooper at Odessa?

"A. Just looking for some trouble.

"Q. He said what?

"A. He just wanted some trouble that night.

"Q. Tell me what you remember him saying.

"A. You mean about the trouble?

"Q. Yes.

"A. He just said he wanted some trouble.

"Q. I want you to, to the best of your recollection, tell me exactly what he told you in discussing this when he told you about the fact that he shot the Trooper in Odessa.

"A. Well, he said, 'Yes, I shot him. I'll shoot him more'."

The testimony objected to by the appellant as prejudicial was to the effect that the appellant, two days before the shooting, was in the company of his friend, "Cookie" Jefferson, who had a .22-calibre pistol which he said was for "the pigs", and that the appellant said he had something better than that; that the next day a State Trooper was fired upon by a young black male identified as Jefferson who was then arrested; that Jefferson, at the time, was driving the appellant's car which was impounded after his arrest, and that the appellant tried to get his car back and was angry over the impounding of his car.

When questioned by the police, the appellant gave two different versions of his activities on the night in question, and sought to manufacture an alibi through the testimony of his girlfriend which was in part, at least, contrary to his first statements.

■ First, it is argued that the State's case rests entirely on circumstantial evidence, and that the circumstances are as consistent with an hypothesis of innocence as well as guilt, citing Jenkins v. State, Del.Supr., 230 A.2d 262 (1967). The short answer to this contention is that it is obvious that the State's case rests primarily on direct evidence, i. e., three confessions of the appellant and proof of the *corpus delecti*. This is sufficient to support a finding of guilty. State v. Brown, Oyer & Term., 2 Boyce 405, 80 A. 146 (1911).

■ Second, it is argued that it was error for the Trial Judge to instruct the jury with respect to contradictory statements. The short answer to this contention is that there were contradictory statements made by the defendant to the police. It was not error to give the instruction.

■ Third, it is argued that testimony concerning the incident involving Jefferson was irrelevant and highly prejudicial. We think, however, to the contrary since the testimony established a possible motive for the shooting, i. e., the anger of the appellant toward the State Police for the im-

pounding of his car. The admission of this testimony was not error.

■ The State asks us to reconsider the rule as to circumstantial evidence long followed in this State. That rule has been to the effect that such evidence, in order to support a finding of guilt, must be inconsistent with any other reasonable finding. We are asked to do so in the light of Holland v. United States, 348 U.S. 121, 75 S. Ct. 127, 99 L.Ed. 150 (1954), changing the rule theretofore followed in the Federal Courts. The Court in *Holland* said:

"[T]he better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect, United States v. Austin-Bagley Corp., 2 Cir., 31 F.2d 229, 234, certiorari denied, 279 U.S. 863, 49 S.Ct. 479, 73 L.Ed. 1002; United States v. Becker, 2 Cir., 62 F.2d 1007, 1010; 1 Wigmore, Evidence (3d ed.), §§ 25–26.

"Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more."

We have carefully considered the matter and are of the opinion that the articulated rule long followed in this State should be made less restrictive. As a matter of fact, the Trial Judge in the case at bar so instructed the jury, and this instruction was not objected to. The exact language of the instruction is as follows:

"You are instructed that circumstantial evidence, as I have defined that term to you, is no different from testimony or direct evidence. You are asked with respect to both forms of evidence to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inferences. In both, you must use your experience with people and events in weighing such possibilities."

We think this instruction properly sets forth the rule.

The judgment below is affirmed.