William E. HOWARD, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Feb. 13, 1973.

**654**

Richard Allen Paul and Paul R. Steyer-mark, Asst. Public Defenders, Wilmington, for appellant.

Mason E. Turner, Jr., Deputy Atty. Gen., Wilmington, for the State.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice:

The appellant, William E. Howard, was convicted in the Superior Court upon charges of assault with intent to commit murder, assault with intent to commit rape, and two counts of sodomy. He appeals.

Howard raises several questions which he argues justify the reversal of his conviction. Since a review of the facts is necessary to understand the questions, they are set forth hereafter briefly:

On the evening of August 26, 1971, at about 9 o'clock, the victim, the chief prosecuting witness for the State, was in the Friendly Tavern in Wilmington where, some time later, she was joined by three men, one of whom she knew casually. One of the men she did not know, Howard, wearing a long-sleeve, purple shirt and white shoes with black stripes, sat next to her and bought her two beers. He invited her to go with him to the Delhaven Cafe and have a drink. Later, Howard suggested that the victim accompany him to a friend's place, to which she agreed. They walked north to South Park Drive which runs parallel to the south side of the Brandywine River, and proceeded along it to the vicinity of Adams Street where Howard suddenly knocked the victim down from behind. He began an attack on her, hitting her on the face and body, tearing at her clothes, and threatening to kill her. She did not cry out because she was afraid that she might be killed. He then attempted to have intercourse with her. She was unable to state on the witness stand with certainty whether or not the act was consummated because he was continuing to beat her.

After this attempted rape, his disposition changed toward the victim, and she thought she would be allowed to leave. She asked him to help her with her clothes, and he became enraged and struck her again in the face. He thereupon forced her to perform two acts of sodomy. Thereafter, the victim attempted to flee. He caught her and began beating her again. He attempted to force her to have intercourse with a tree and, when she resisted, he pushed or hit her hard in the

stomach, causing her to fall down the bank into the swollen Brandywine millrace. At this point, there was a steep downgrade toward the millrace so that anyone being pushed could easily fall down and into the race. After she fell into the millrace, Howard disappeared, telling her that he was going to summon help. He never returned.

Finally, the victim, approximately five feet tall, extricated herself with great difficulty from the flooded millrace after having remained in the water for an appreciable period of time. She eventually found a rock on which she managed to climb out, and proceeded to the nearby emergency room of the Wilmington Medical Center, Delaware Division. She arrived at the hospital shortly after 3 a. m. She was badly beaten about her face, shoulders, arms and legs which were bruised, dirty and scratched as though she had been dragged along the ground. The only clothing worn by her at this time was a pair of yellow panties which had been ripped away in the rear. Her injuries were recent and looked as though they had all been inflicted by a hand or fist. She had a fractured left collar bone and she also had a rash on her body which had not been there the day before, and which could have been caused by contact with poison ivy or oak.

On the following morning, Wilmington Police investigated the area where all of the foregoing events took place. They found an area of battered-down foliage and took samples which were later identified as poison ivy. Certain of the victim's belongings were found strewn about the area. Several days later, the victim's shoe and brassiere were recovered from a screen at the end of the millrace. Also, at the scene of the attack was recovered a brass belt buckle in the shape of a peace symbol.

Howard was arrested on September 2, 1971 and initially denied any knowledge of the incident. He later changed his story and admitted that he had been with the victim at both the Friendly Tavern and the Delhaven Cafe. At the time of his arrest he had a rash on his knee which could have been caused by contact with poison ivy or oak. After his arrest, Howard was positively identified by the victim as her assailant. She repeated this identification at his trial.

In the execution of a search warrant at the residence of Howard, a purple shirt and white shoes with black stripes were seized, which were later identified at the trial as resembling those worn by the assailant.

The State produced evidence that Howard owned a peace symbol belt buckle like the one found at the scene of the crime. Two of the appellant's friends who saw him on the night of August 26 testified, one to the effect that he did not notice the type of belt buckle Howard was wearing at that time, and the other that she noticed on the night in question that he was wearing a belt with a peace symbol buckle. She testified that the belt buckle found at the scene looked like the buckle worn earlier by Howard. These two witnesses also testified that, on the following day, Howard told them he had tried to save a beaten female in the Brandywine River.

Howard relied on the defense of alibi. He testified to the effect that he was at his mother-in-law's house from 6:30 to 11 p. m. on the night of the attack; that he then went to the Friendly Tavern for a beer and left there at 11:50 p. m. and arrived home at midnight. He denied that he had gone to the Delhaven Cafe and also that he had attacked the victim along the Brandywine River. His wife corroborated this testimony. In rebuttal, the State practically demolished Howard's alibi; his mother-in-law testified that Howard had left her house at 9:30 p. m., and the proprietor of the Friendly Tavern testified that she remembered Howard being there in the purple shirt that had been seized at his home.

The first point raised by Howard is that the Court's refusal to dismiss the count of assault with intent to commit murder and to substitute a count of simple assault constitutes reversible error.

The Trial Judge instructed the jury that, in order to convict of assault with intent to commit murder, the jury must be satisfied beyond a reasonable doubt that the assault was committed by the accused and, secondly, that it was committed with intent to murder. Thus, if the unlawful assault had been accomplished and the victim had died from the effect of the injuries, the accused would have been guilty of murder. Howard concedes that this was a proper instruction in accordance with the laws of this State. However, he argues that a further comment by the Judge was prejudicial to the appellant. The additional comment was, "In the case at bar, of course, the attempt to do violence was accomplished."

The jury was also instructed that in order to determine the intent of the accused, the jury might consider the character of the assault and the danger of resulting death, and any other act which showed the condition of the accused's mind at the time the alleged assault was committed. Howard argues that the circumstances of this assault were such that, if death had resulted to the victim through drowning, the proper verdict would have been that of involuntary manslaughter and not murder, and, thus, it was error for the Trial Judge to submit the issue of assault with intent to murder to the jury. He argues that if a person, in doing an unlawful act, in itself felonious, or attempting to do great bodily harm, undesignedly kills another, the result is involuntary manslaughter. He cites State v. Arnold, Del.O. & T., 3 Terry 47, 27 A.2d 81 (1942).

We have no doubt of the correctness of the holding in the *Arnold* case, but we think it has no pertinency under the circumstances before us now. If this rule were to be applied, it would be necessary for us to ignore the extensive and serious injuries suffered by the victim, and the sustained and vicious beating. We would also be required to ignore the repeated threats by Howard to kill the victim. There was evidence, also, that in response to the victim's resistence, Howard either hit or pushed her in the stomach, causing her to fall into the swollen millrace. We would also have to ignore the fact that, after these acts, Howard voluntarily disappeared into the night and made no attempt to assist the victim or to rescue her.

We think it clear that there was sufficient evidence produced by the State to clearly indicate the malicious attitude of Howard throughout this episode, and that, had the victim died, a charge of murder against him would have been supported by the evidence. The presence of the element of malice is all-important, and it may be shown not only by the use of deadly weapons, etc., but by a prolonged beating resulting in serious injuries. Such evidence justifies a conclusion of malicious intent on the part of the accused to do such serious harm forcibly to human life as to raise the resulting charge against the accused from manslaughter to murder. Jenkins v. State, Del.Super., 230 A.2d 262 (1967).

Furthermore, malice, which is necessary as an element in all charges of murder or assault with intent to murder, exists in the doing of every intentional cruel act. State v. Winsett, Del.Supr., 205 A.2d 510 (1964).

Howard attempts, in presenting this argument, to isolate from each other the various acts performed by him as separate assaults upon the victim. He builds an argument based upon the contention that no one of the single acts is sufficient to satisfy the test required to find malice. This, however, he may not do since the assault took place over a period of time and must be regarded as an entirety and not be separated into isolated actions. The jury is required to look to all the evidence and to reach its conclusion based upon the whole,

and not isolated portions of it, particularly when it is obvious that the entire assault upon the victim must be regarded as one continuing act.

■ With respect to the argument made, that the additional comment by the Trial Judge in his instructions to the jury on this point to the effect that the attempt to do violence was accomplished, which is charged as a prejudicial comment on the evidence, we think that no prejudice could possibly have resulted to Howard, even though the comment be considered as a comment upon the evidence prohibited by Article IV, § 19 of the Delaware Constitution, Del.C.Ann. Our reason for so holding is that there was overwhelming and unquestioned evidence that the victim was violently and viciously assaulted. This evidence was absolutely uncontradicted. The comments on evidence prohibited by the Constitution are only those which tend directly or indirectly to convey to the jury the Judge's estimate of the truth or falsity of the testimony concerning the matter. State v. Carey, Del.O. & T., 6 W.W.Harr. 521, 178 A. 877 (1935).

In the case before us, there is no question but that a violent assault had taken place upon the victim by someone, and the only real point in controversy was the identity of that someone. The comment made by the Judge, if it was a comment on the evidence, did not relate to the crucial point of identity.

■ Howard also argues that error was committed by the introduction into evidence of the belt buckle and certain evidence relating to the gathered-up foliage as being poison ivy. The argument is that the belt buckle should not have been admitted into evidence because it was not positively identified as Howard's, and that the evidence relating to poison ivy was inadmissible because it was not positively established that the rashes found on the victim and on Howard were caused by poison ivy. Howard seems to argue that each item of circumstantial evidence must, in itself, exclude every other reasonable hypothesis but that of guilt. We think, however, that the rule announced in State v. Watson, Del.O. & T., 3 Boyce 273, 82 A. 1086 (1912), relied upon by the defendant, to the effect that circumstantial evidence must exclude every reasonable hypothesis but that of guilt, would not result in the inadmissibility of the evidence claimed to have been improperly admitted. That rule applies only to the whole body of circumstantial evidence and not to individual items.

■ As a matter of fact, we recently restated the circumstantial evidence rule applicable in the courts of this State. Henry v. State, Del.Supr., 298 A.2d 327 (Nov. 8, 1972). No longer is the exclusion of every reasonable hypothesis but that of guilt required. Circumstantial evidence is now to be treated as any other evidence for the jury to consider and to draw inferences from.

It follows, therefore, that the admission of the complained-of evidence was not error and, indeed if error, was nonprejudicial.

■ Finally, Howard argues that the Trial Court committed an abuse of discretion in refusing to dismiss an alternate juror. The facts upon which this contention is based are that, after the impaneling of the jury, it was brought to the attention of the Trial Judge that one of the jurors had made remarks which might be prejudicial to Howard. The juror was questioned by the Trial Judge in the presence of attorneys for both sides. The specific remark made by one of the alternate jurors was a comment to another juror within the hearing of Mrs. Howard, wife of the accused, to the effect that he ought to hang. Upon questioning, it appeared that the alternate juror had not been discussing the case at bar at all, but had been talking about a recent crime which had occurred in the community, and that she had no knowledge whatsoever of the case against Howard. The Trial Judge ruled that the juror had

explained away any possible prejudice, and he refused appellant's request to excuse the juror.

We think the argument is nothing but speculation that a juror, outraged by another brutal crime, was vindictive and therefore prejudiced against Howard, and that such prejudice would fatally affect the entire jury. The argument is inappropriate here. Under Superior Court Rule 24, Del.C.Ann. the Trial Judge is required to permit an examination reasonably calculated to ascertain the prejudice of a juror. Such an examination was permitted, and no prejudice was disclosed. The refusal, therefore, of the Trial Judge to dismiss the juror was a matter to be determined within his sound discretion. Dumire v. State, Del.Supr., 278 A.2d 836 (1971). We fail to find any showing of an abuse of such discretion by the Trial Judge.

There is, therefore, no reversible error, and the convictions are affirmed.