STATE v. ISABELLA DONOVAN.

(*July* 10, 1939.)

LAYTON, C. J., RICHARDS and TERRY, J. J., sitting.

*James R. Morford,* Attorney-General, and *William J. Storey,* Deputy Attorney-General, for the State.

*James M. Tunnell, Jr.,* and *A. B. Magee, Jr.,* for the defendant.

Court of Oyer and Terminer for Kent County, No. 5, April Term, 1939.

LAYTON, C. J.: ▮ The question before the Court is whether statements in the nature of a confession made by the defendant to officers of the law while examining her were made in circumstances rendering them admissible as free and voluntary. The cases on the subject of voluntariness of inculpatory statements made by persons accused of crime are in hopeless conflict. The question always should be, was the situation of the accused such that there was a reasonable probability that a false confession would be made; and the correct course to pursue is to determine whether the inducement held out by one in authority was sufficient to cause a reasonable person in a like position to speak regardless of truth or falsity, having consideration for the age, character and situation of the accused.

▮ In the instant case the accused is a girl about the age of 18 or 19 years. The evidence was that during the questioning to which she was subjected she was entirely calm and self possessed and a person of determined character. The defendant relies upon certain statements made by one of the peace officers while questioning her as constituting both a threat and a promise of benefit to her and an inducement sufficient to have caused her to make a false confession. It is argued that the remark that she would take a chance of being hanged if she stuck to the story she had been telling constitutes first a threat sufficient to invalidate the confession. From the evidence it appears that from the course of the bullet it would have been very difficult for the deceased to have inflicted the fatal wound upon himself, having regard for his position in the automobile as described by the defendant. The statement of the police officer, when examined in the light of the circumstances, was in no proper sense a threat. It does not, of course, suggest the offering of immediate physical violence to the accused. At most it was an expression of opinion on the part of the officer that in the orderly processes of the law the

defendant would be taking the risk of hanging if she persisted in her account of events which he regarded as inherently impossible. It is also argued that the statement is to be construed as one holding out prospect of a benefit if she changed her story. We do not agree; and upon careful reflection we are unable to view the statement of the police officer as one reasonably calculated to cause the accused to make a false confession.

The next statement relied upon is "if you want to tell us about it, tell us about it, and if there is anything I can do for you I will do it". It is contended that the statement, fairly construed, amounted to a promise of benefit to the accused sufficient to invalidate confession. The law is that the promise must be positive, must be a controlling inducement, and must hold out such a prospect of benefit to the accused as would be likely to induce a false confession. That is to say, the promise must have relation to the legal consequences of the offense itself. It must involve some assurance of benefit to the accused with respect to the crime under inquiry. Here the promise, at best, is conditional. It is not, in any sense, positive. There is nothing to suggest immunity or escape from punishment; nothing reasonably suggestive of a lighter punishment or no punishment at all. Having due consideration for the age, intelligence and character of the accused, and the situation confronting her, we are unable to view the statement of the officer as one suggesting anything of definite benefit to the accused reasonably calculated to induce a confession regardless of its truth or falsity.

Judge Harrington, in his dissenting opinion in the case of *State v. Bostick*, 4 *Harr.* 563, many years ago, announced the correct rule. He said the question is not whether what was said to the accused induced the confession, for that would exclude every confession that was asked for, but whether what was said to the prisoner in-

duced a belief that a confession would place him in a better condition than he was before the confession; which would be holding out to him a real benefit.

We are of opinion that the confession is admissible in evidence to be weighed by the jury.

LAYTON, C. J., charged the jury, in part, as follows:

The case before you is important both as it concerns the defendant and the State, and as it concerns the general public.

It is necessary for the welfare of society generally that all violent deaths be fully investigated so that any doubt or uncertainty as to the causes thereof be set at rest by verdict of a jury selected from the body of the county in which the charge is triable; and the Court has entire confidence that you will consider the evidence before you carefully and conscientiously, and that you will render a verdict in accordance with the law as it will be given to you and the evidence which you have heard, uninfluenced by any feeling of favor or prejudice either for or against the defendant or the State.

Isabella Donovan, the defendant, is charged in the indictment before you with the murder in the first degree of one Vaughn Webb. Such an indictment comprehends the possibility of other issues than murder of the first degree. Upon the principle that the greater offense includes the lesser offenses, the issues of murder of the second degree and of manslaughter are possible issues under an indictment charging murder of the first degree.

The Attorney-General has waived expressly the issues of murder of either degree, and has elected to prosecute the charge of manslaughter against the defendant. No inference to the prejudice of the defendant or the state, or in favor of the defendant or the state, shall be deduced

from the fact that the indictment in words charges the defendant with murder of the first degree.

The contentions of the prosecution and defendant will be very briefly stated, and they will be stated as contentions only and not in any manner to indicate any opinion of the Court as to the merits of the case. The details of the evidence are for your recollection, consideration and estimation.

The state has offered evidence tending to show that on the night of March 15 last, in Milford, in this county, Vaughn Webb, the deceased, and Isabella Donovan, the defendant, were sitting in a parked Chevrolet coupe in the town of Milford; that an altercation arose between them, as a result of which Webb, taking a small 22 calibre revolver from the back of the seat, said that he would kill the defendant and then kill himself; that upon this the defendant said that he, the deceased, was too yellow; that this remark was followed by Webb saying that he would not kill her as he loved her too much; but later, upon Webb's taking up the revolver again, the defendant took it from him and shot, intending to shoot past him, and not designing or intending hitting him; that the bullet, however, took effect upon the body of the deceased, and pursuing a downward and inward course, passed through his heart and caused his death.

The State contends, therefore, that the offense of manslaughter has been clearly made out by proof both under the statute and the common law, as will be explained to you.

Murder is the felonious killing of one human being by another with malice aforethought. The crime differs from manslaughter in that malice, or wickedness of heart, is an essential element; manslaughter, on the other hand, is the felonious killing of one human being by an-

other, but without malice. One of the usual manifestations of manslaughter is where, in a sudden fight a person is struck by a blow, and in the heat of an uncontrollable passion aroused by the provocation, immediately strikes and kills his adversary. Such killing is unlawful, but it is not regarded as a malicious killing, that is, not a killing inspired by a wicked and depraved heart, for the most peaceably inclined person may in a gust of passion aroused by adequate provocation lose control of himself and strike and kill. This kind of manslaughter is usually called voluntary manslaughter; and with this form or type of manslaughter you are not concerned.

But manslaughter also occurs where one in committing an unlawful act, not in itself felonious or tending to great bodily harm, or in committing a lawful act but without proper care and caution, unintentionally kills another. This form of manslaughter is usually called involuntary manslaughter, for the reason that the killing is without design or intention. Such killing, likewise, while unlawful, is not regarded as a malicious killing. This is the type of manslaughter for which the defendant is under prosecution.

*Section* 5290 of the *Revised Code* of 1935 provides that it shall be unlawful for any person, in jest or otherwise, intentionally to point a gun, pistol or other firearm at or towards any other person at any time or place. The statute makes such an offense a misdemeanor, and provides the penalty of a fine for its mere violation; and the statute proceeds to declare that if death should result to any person by the discharge of such firearm while so pointed, the person pointing the firearm shall be deemed guilty of manslaughter when such killing shall not amount to murder.

The statute was enacted by the legislature for the protection of human life and in the recognition of the

manifest danger arising from the careless handling of firearms.

You will note and keep in mind the language of the law. It is unlawful for any person at any time or place, either jokingly or otherwise, intentionally to point a firearm at or towards another person. The act of so pointing a firearm is an unlawful act in itself, even if no injury results to the person at or towards whom it is pointed; and if death should result from the unlawful act, the offense is declared to be manslaughter, at the least.

In such case, it makes no difference that the shooting was accidental or unintentional, because the statute makes the intentional pointing of a firearm at or towards another a crime, and where an act is done in violation of law, it cannot be called in law an accidental act.

Quite apart from the statute which has been explained to you, the law generally, that is, what is called the common law, endeavors to safeguard human life against the reckless use of firearms, and the negligent handling of a loaded firearm causing death to another is manslaughter at the common law; and, specifically, where one, attempting to shoot over the head of another, or past the body of another, with knowledge that the use of the weapon in that way is dangerous to the life of that other, and causes his death, the offense is manslaughter although the act was simply a reckless one and without design or purpose or intention to kill. Such an act comes within the very definition of involuntary manslaughter, for discharging a deadly weapon in circumstances incompatible with human life is an unlawful act, and if death results from the unlawful act, it is manslaughter even though the killing was without design or intention.

Therefore, if you shall be satisfied from the evidence beyond a reasonable doubt that the defendant inten-

tionally pointed the revolver at or towards Vaughn Webb while sitting in the automobile with him on the night of March 15 last, and that while so pointed the revolver was discharged thereby causing his death, your verdict should be guilty of manslaughter notwithstanding that the defendant did not intend or design the death of the deceased.

Apart from the statute, if you shall be satisfied beyond a reasonable doubt from the evidence that while sitting in the automobile with the deceased, the defendant, Isabella Donovan, attempted to shoot past the body of Vaughn Webb, and without design or intention on her part to kill him, shot and killed him, your verdict, likewise, should be guilty of manslaughter, for in such circumstances it would make no difference that the death of Vaughn Webb was not designed or intended.

The defendant does not deny that Vaughn Webb was fatally shot while sitting in the automobile with her on the night of March 15 last; but she contends that the deceased took his own life because of her refusal to forgive him for some offensive act on his part. Whether Vaughn Webb shot himself or was killed unintentionally by the defendant is a question of fact to be determined by you from all of the evidence in the case. There is no presumption that a person has committed suicide, and where in a prosecution for an unlawful homicide, the defense of suicide is relied upon by the accused, the burden is upon him or her to establish the fact by proof satisfactory to the jury, or to that degree as will create, together with all other evidence in the case, a reasonable doubt of the defendant's guilt, unless such doubt arises from the evidence produced by the State itself.