STATE OF DELAWARE v. SAMUEL J. PRIEST.

(*August* 28, 1963.)

LYNCH, J., sitting.

*Walter K. Stapleton*, Deputy Attorney-General, for the State.

*Theodore F. Sandstrom* (of Killoran and Van Brunt) for the Defendant.

Superior Court for New Castle County, No. 226, Criminal Action, 1963.

LYNCH, Judge.

Defendant was indicted by the Grand Jury on March 6, 1963, charged with having violated Title 11 *Del. C.* § 811, for having held up and robbed one, Dominick George, a taxi-cab driver, on January 7, 1963, in the City of Wilmington, and robbing George of approximately $13.00.

Defendant was arrested by Wilmington Police on January 29, 1963, at about 3:30 A.M., and booked for an alleged auto theft. While he was being questioned about several auto thefts, which questioning began on that day at about 9:15 A.M., defendant orally admitted, sometime between 3:00 and 4:00 P.M., that he committed the robbery on which he was indicted. He was then arrested and the complaint filed on January 29, 1963 at about 5:00 P.M.

He was tried by a jury on June 25, 1963 and the jury returned a verdict "Guilty as charged". Defendant has moved for a new trial. The case is at this posture. The Court has heard oral argument and considered briefs.

Defendant's counsel advances two contentions. *First:* that it was the Court's duty to have made findings on disputed facts and thus excluded a written statement and an oral admission that defendant committed the crime—at the conclusion of the *voir dire* examination held without the jury being present; and *Secondly:* the Court erred in not permitting defendant to relate his "state of mind" upon hearing certain statements made to him by the officers when he made the oral admission, which statement, defendant contends, amounted to a promise or an inducement touching on "the issue of voluntariness" of the oral

admission, thus rendering both statements inadmissible because "improper methods" had been used in procuring the oral admission.

The State introduced evidence tending to show that the defendant voluntarily signed a written statement on January 30, 1963, at about twelve noon, admitting his guilt on the charge for which he was indicted. Defendant, however, states, at all times, he denied any guilt on the robbery charge but conceded that he did sign a statement on the twenty-ninth of January—not the thirtieth, as the Police contend—believing at the time that he was admitting his guilt for those auto car thefts for which he was then under suspicion and on which he had been arrested.

On *voir dire*, in the absence of the Jury, Detective Sergeant Edward F. Bonk, an officer of 17 years standing with the Wilmington Police force, testified that on January 29, 1963, at about 9:15 A.M., he and Detective Sergeant John T. Ogden had been assigned to interrogate defendant and one Robert L. Dorsey regarding a number of auto thefts. After a break for lunch the Detectives again interviewed Dorsey. At about 2:30 P.M. they were given information by him which indicated to them that defendant had committed the robbery of Dominick George.

Sergeant Bonk testified that they first asked defendant about the George robbery in an interview that began on January 29, 1963, at 3:00 P.M., that defendant initially denied any part in the crime, but when the Detectives told him some of the information which they had—such as that Dorsey had given him a gun the evening of the robbery—he voluntarily gave a full and detailed oral account of how and why he had committed the robbery. This account, say the Detectives, contained details about the commission of the crime which they had not related to the defendant.

The interview was completed at 4:00 P.M. and defendant was arrested at approximately 5:00 P.M. and charged on the robbery charge with which he was later indicted.

Sergeant Bonk testified that the next day, after the defendant had been committed on this robbery charge in the Municipal Court, in default of bail, they further questioned the defendant and he voluntarily reiterated the same story he had given the previous afternoon, and that it was taken down in writing by Sergeant Bonk. Immediately thereafter, at about 11:10 A.M. on January 30, 1963, according to Sergeant Bonk, the statement was read by and read to the defendant and then he signed it.

Sergeant Bonk testified that no threats, promises or inducements whatever had been made to defendant with respect to the oral admissions and written statement, and that defendant had been calm and cooperative at all times during the questioning.

On cross-examination, Sergeant Bonk reaffirmed his statement pertaining to the voluntariness of defendant's oral and written statements. He specifically denied that either he or Sergeant Ogden made certain statements to defendant which defendant later testified had been made to him by them and upon which defense counsel now relies to show that the admissions, oral and written, had been involuntarily made.

Defendant's testimony on *voir dire* was (1) that he was arrested on a charge of auto larceny at about 3:45 A.M. on January 29, 1963; (2) that he was taken to the station where he spoke briefly with Patrolmen Johnson and Miles; (3) that he was then taken to a cell; (4) that 9:00 A.M. he was taken to Municipal Court; (5) that he was then returned to his cell for about twenty minutes; (6) that Sergeant Bonk then came down to his cell and

took him to the interrogation room at about 10:30 A.M.; (7) that he was interrogated by Sergeants Bonk and Ogden only about auto larceny charges from 10:30 A.M. to 1:30 P.M.; (8) that he was taken back to a cell for an hour, where Sergeant Bonk brought him a "sub" and a soda; (9) that he was then questioned about two interstate auto thefts; (10) that after a further short period in his cell he was brought up and asked about the George robbery; (11) that he denied any part in this robbery; (12) that Sergeant Bonk told him that Dorsey had "sold him out"; (13) that he was presented with a typewritten paper, which had been prepared out of his presence and the text of which was hidden under a book; (14) that he signed this paper upon request, without reading it or even seeing the text; (15) that while the statement offered by the State had his signature on it, that signature had been written on the afternoon of January 29th and not on the morning of January 30th, and (16) that he was arrested on the charge of robbery at 5:00 P.M. on January 29th.

*Defendant says,* as to the ev*ents of the period* between 3:00 and 4:00 P.M. on the 29th, *that Sergeant Bonk had made a statement to him to the general effect, "Don't worry about a thing, we'll take care of everything."* When defense counsel asked defendant what he thought Sergeant Bonk had meant by the latter statement, the Court refused to permit the question to be answered.

On cross-examination, in the course of *voir dire,* defendant testified, *inter alia,* that he had not been mistreated by the police, but that he had signed the paper presented to him because he was "tired and nervous".

It appears from the reporter's notes that while defendant was being questioned on *voir dire* he gave this testimony:

"BY MR. SANDSTROM:

"Q Did anyone say to you, or words to like effect, 'You know, they don't keep men long in jail today. You might just as well tell us about all these charges. They are only going to sentence you on one, anyhow'? .

"A Sergeant Bonk said that."

It further appears that defendant gave this testimony on *voir dire:*

"BY MR. SANDSTROM:

"Q Would you describe to the Court the circumstances surrounding your signature to that piece of paper, how it took place?

"A Well, that is when they—he had said earlier when I appeared into the Investigation Room, he said, 'You know, we have to go home. I have a family, and all we need to do is to get these papers signed and everything will be all right', and he said, 'They will not try you on all these charges, the place is crowded'."

This testimony is to be considered together with the officers' testimony denying that any threats, promises or inducements had been made to defendant in connection with the procuring of the signed statement or the making of the oral admission by defendant.

At the close of *voir dire*, the Court, on the basis of *Wilson v. State,* 10 Terry 37, 109 A.2d 381 (1954), stated that the signed statement and evidence of the oral admissions, if offered, would be admitted in evidence and that the Jury would be instructed to pass upon the voluntariness of the admissions and statement, as well as the weight to be given to them.

After the jury was recalled, Sergeant Bonk repeated the testimony he had previously given, beginning with

the events from 3:00 P.M. on January 29th to the giving of the statement on January 30th. He also repeated his testimony that no threats, promises or inducements had been made to the defendant to procure the signed statement and/or the oral admissions. Sergeant Ogden testified later and completely corroborated Sergeant Bonk's testimony.

Defendant then took the stand and related a great part, but not all of the same story he had previously given on *voir dire* concerning the events as they had taken place in the same period from 3:00 P.M. on the 29th of January through the morning of January 30th.

Upon close of the evidence, the Court instructed the jury, in substantial accordance with requests made by defense counsel, that the members of the jury should totally disregard the confessions if they found them to have been induced by coercion or promises of leniency, etc., and that, in any event, the weight to be given them was for the jury to decide. Defendant's counsel has not challenged the Court's instructions relating to the procuring of the signed statement or the making of the admissions.

The jury returned a verdict of "Guilty as charged".

Counsel for defendant concedes (page 4 of his opening brief) :

"* * * the issue of the involuntariness of the statement on the ground of inducement being held out to secure a better condition was presented only and entirely on voir dire before the court. It was decided [seemingly by counsel] in the best interest of the defense of the defendant not to raise, and thus not bring out before the jury, the circumstances surrounding Priest's initial arrest and interrogation, especially on the seven other unrelated incidents, to prove or show the statement was involuntary.

The defendant did not intend, if the statements were admitted into evidence by the Court, to raise the issue of voluntariness again."

Defendant's counsel argues thusly (pages 5-6 of his brief):

"The defendant has the right, after the trial judge admits a statement into evidence in view of testimonial conflict, to raise the issue of voluntariness before the jury.

"In effect, the defendant is in the driver's seat as to the course the trial procedure will follow after the confession is admitted into evidence. The jury in no event thereafter rules upon its admissibility, but rather decides in every case the *weight* to be given to it from the circumstances surrounding its acquisition.

"The error lies in the fact that no specific finding of admissibility was made by the Court, only that the facts on the question of voluntariness were in dispute. Having found the facts to be in dispute on the issue of voluntariness, the effect of that ruling was to submit the open question of *admissibility* of defendant's statements to the jury, contrary to the clear mandate of the Wilson case. The Court must, in the exercise of its judicial function, decide as a matter of law, either that a statement or confession is admissible or it is not. It follows, since the Court must rule on a statement's admissibility, it also must have decided in favor of its voluntariness. This was not done in the instant case.

"The jury, then, should never have been given the opportunity to pass upon the statement's admissibility, which was the resultant effect of not resolving the question on voir dire."

Defendant's counsel summarizes his contentions as follows:

"* * * it was error (1) not to rule preliminarily at the close of the voir dire examination upon the admissibility of the oral and written statements, and (2) to permit the jury to determine the admissibility of the oral and written statements.

Defendant's argument is stated (page 7 of his brief) :

"The heart of defendant's position herein is the fact that the Court should have decided, as a matter of law, that the oral and written statements were involuntarily obtained, and therefore should have been excluded preliminarily at the close of the voir dire examination.

"Defendant's argument is of course predicated upon the assumption that the trial judge must rule initially upon the admissibility of any oral or written statement containing incriminating admissions of guilt."

▮ Oral or written statements of guilt, obtained by a promise or hope of benefit or reward in the nature of an inducement to speak, are inadmissible because they are not considered to have been made freely and voluntarily. *State v. Bostick*, 4 Har. 563; *State v. Prettyman*, 6 Boyce 452, 100 A. 476, 478 (Ct. O. & T., 1917) ; *State v. Donovan*, 1 Terry 257, 261-262, 8 A.2d 876, 878 (Del. O. & T., 1939) ; 2 Wharton, Crim.Evid., §§ 349, 378, 380; 20 Am.Jur.—Evidence—§§ 482, 483; 23 C.J.S. Criminal Law §§ 817 (2), 822, 825; *Sorenson v. United States*, 143 F. 820 (C.C.A. 8th Cir., 1906) ; and *State v. Jay*, 116 Iowa 264, 89 N.W. 1070 (1902).

Whether any promise of benefit or hope of reward amounts to an inducement sufficient to invalidate a confession depends on several factors, which would lead to the ultimate conclusion that a reasonable probability existed that a false confession was made. See *State v. Donovan*, 8 A.2d at p. 878; 2 Wharton, above, § 378; 23 C.J.S. Criminal Law § 825.

Whatever references were made to the robbery charge, on which defendant has been convicted, came after 3:00 P.M. on January 29, 1963, while defendant was being questioned on a number of auto theft cases, and after the police had obtained a lead to the offense by questioning Robert Dorsey. Detective Bonk testified Priest was then asked about the robbery charge.

At first Priest denied any knowledge of the charge, but following further questioning, during which police told Priest things that Dorsey had told them, Priest in effect said—"O.K., you have me, I'll tell everything that happened". Seemingly, from the police testimony, Priest's oral confession of guilt came spontaneously, free from all police influence.

Defendant argues it was up to the Court to consider several "subjective" factors, pertaining to the defendant, his age, education, and the circumstances of his being questioned, and from them determine *as a matter of law* if the statements, oral and written, were given under circumstances which would have shown promise or hope of benefit or reward in the nature of an inducement to give the confession or statement. Apparently defendant's attorney would have the Court wholly ignore the sworn testimony of the police, in which they gave their version of defendant's being questioned; the making of the oral admission and the subsequent signing of the written statement.

 The Court is of opinion, based on its reading and study of *Wilson v. State,* 10 Terry 37, 109 A.2d 381 (Sup.Ct.1954), that it was required to rule on the admissibility of the oral admission and written confession to determine if they were given under circumstances which would demonstrate any impropriety on the part of the officers in obtaining such evidence, thus making them in-

admissible, and that the record shows it did so. The Court was unable, *as a matter of law,* to find from the evidence that the statement and confession were given because of the use of any improper methods.

What defendant seeks is to require the Court to equate the requirement of a preliminary ruling on admissibility with an alleged obligation on the Court to resolve all issues of credibility and conflict of testimony and make a determination of fact as to whether the admissions and/or statement were voluntary or involuntary. This does not represent what the Supreme Court ruled in the Wilson case; see also 23 C.J.S. Criminal Law §§ 834, 835, 836, 837, 838. Undoubtedly, it is possible, if there is no sufficient conflict in the testimony concerning the circumstances of the making of the oral admissions or the later signing of the written confession, for the Court to rule, *as a matter of law,* that neither the oral admission or the written confession, or both, are admissible because it was shown there was some element raising a doubt or question as to the voluntary act or acts on defendant's part in making either or both. But here there was, as the Court views it, a definite and distinct conflict in the evidence as to the circumstances under which the oral admissions were made and the written confession later signed. The Court was not at all impressed that defendant's version of what happened on each occasion was factually true; it seemed unrealistic—the product of seeing too many television shows.

Under such circumstances, the Court ruled, at the conclusion of *voir dire,* only that the evidence, if offered, could be received, on the showing made to that point, on an express or implied finding it was given voluntarily, leaving for the jury to determine the credibility to be given to the witnesses, in light of the conflict in the evidence and the weight to be given to it.

It was said by the Supreme Court in the Wilson case, 10 Terry at 48, 109 A.2d 387 and 388:

"* * *. When a confession is offered, it is the practice for the State to go forward with evidence to show that it was voluntarily made. The defendant has the right of *voir dire* examination in the absence of the jury, and may offer testimony touching the issue of voluntariness. The trial court then rules upon its admissibility. *It must determine whether there is a reasonable probability that the statement was obtained by the use of improper methods.* Cf. *State v. Donovan,* 40 Del. 257, 1 Terry 257, 8 A.2d 876. If it determines the confession to be admissible, the defendant still has the right, if the testimony is conflicting, to have the issue of voluntariness submitted to the jury; and always has the right to have the jury pass upon the weight to be given to the confession. *If the confession is admitted, the State again presents evidence before the jury on the issue, and the defendant has again the right to do so, and the right to appropriate instructions from the court upon the issue when the case goes to the jury."* (Emphasis supplied)

The Wilson case has subsequently been interpreted by the Supreme Court and this Court to mean that unless the trial judge can conclude, as a matter of law, that the statement was improperly induced, it should admit the statement and allow the jury to pass upon this issue. In *State v. Lasby,* 4 Storey 39, 174 A.2d 323, 325, Judge Duffy ruled:

"Turning to our law, I am satisfied that the procedure followed at trial followed the Delaware practice as set forth in detail in the Supreme Court's opinion in *Wilson v. State,* 1954, 10 Terry 37, 109 A.2d 381. And as to the facts and circumstances surrounding the statement, these certainly seem less extreme than those before the

Court in Wilson. In the light of that decision, *I cannot say as a matter of law that the circumstances surrounding the making of Lasby's statement were coercive.*" (Emphasis supplied)

On appeal (185 A.2d 271 at page 273 (Del.Sup.Ct., 1962)), the Supreme Court stated:

"First, it is said that the humiliation of being handcuffed to an inanimate object for five hours so affected the mind of defendant that the statement must as a matter of law be deemed involuntary. *The argument raises a question of fact, not of law. The question was heard by the court and then submitted to the jury in accordance with our practice. See Wilson v. State, 10 Terry 37, 49 Del. 37, 109 A.2d 381. In the light of that decision, the trial judge held that he could not say as a matter of law that coercion existed. We think he was right. Defendant in effect asks us to overrule the Wilson case. This we decline to do.*" (Emphasis supplied)

See also *State v. DeKoeningswarter*, 4 Storey 388, 177 A. 2d 344, 347, where Judge Christie stated of challenged confessions:

"* * *. Such matter is presented to the jury only after a hearing on *voir dire* results in a determination that there is an issue for the jury."

Judge Christie was considering a Motion to Suppress Evidence, allegedly illegally obtained. His ruling seems apposite to what is now before this Court, and it is:

"There is now sufficient undisputed evidence before the Court to make it clear that defendant's motion must be granted even if the evidence is viewed in the light most favorable to the State. There is no issue of material fact for the jury."

The law, as stated in the Wilson and Lasby cases, is in accordance with the law in a majority of jurisdictions. The proper procedure appears at length in 2 Anderson, Wharton's Criminal Evidence, § 351 (12Ed.1955).

Defendant has not cited any case where on the basis of a conflict in the testimony the Court has ruled, as a matter of law, that a statement was inadmissible, and research by the State and the Court has not disclosed one. Indeed, the case cited by defendant, *State v. Brown*, 2 Boyce 405, 80 A. 146 (Del. O. & T. 1911), is authority to the contrary. There the police officer testified, 2 *Boyce* at 408, 80 A. at 148, that he had merely told the defendants, "to tell the truth and nothing but the truth", while an independent witness called by the defense testified, 2 Boyce 409, 80 A. 148, that the officer had said, "Tell us the truth; it will be better for you." The statement was admitted over the objection of the defense and the issue of inducement was submitted to the jury, which was charged, 2 *Boyce* 412, 80 A. 149, how they were to consider admissions made on the promise of favor.

As the Court views Brown, Wilson and Lasby, the Court committed no error admitting the admissions and confession, and leaving to the jury the determination of any improper inducement on the part of the officers in procuring either or both.

Defendant's next claim of error is that he was improperly precluded from testifying as to what he thought Sergeant Bonk meant by his statements to defendant, see supra, page 596. Recognizing that the correct constitutional standard is whether the behavior of the State's law enforcement officials was such as to overbear the will of defendant at the time he made his confession, *Rogers v. Richmond*, 365 U.S. 534, 545, 81 S.Ct.

735, 5 L.Ed.2d 760 (1961), it may be assumed, as defendant maintains, that the defendant's state of mind at the time he signed the statement is relevant.

In this instance, however, *the fact is that, in an extensive cross-examination of Sergeant Bonk and a lengthy direct examination of defendant the defense was allowed to fully develop all of the circumstances surrounding the making of the admission,* followed up by the signing of the written statement. The defendant was permitted to testify as to his reasons for signing the statement. With this full disclosure of the circumstances and this direct evidence as to defendant's state of mind when he said he made the admission and later signed the statement, the Court rules that its exclusion of the testimony of defendant as to his interpretation of what he considered Sergeant Bonk's state of mind to be at an earlier point in time, was not erroneous; clearly it was not prejudicial error. *State v. Harrington,* R.I., 171 A.2d 72, 74 (1961).

Defendant's motion for new trial is denied; order accordingly.