STATE of Delaware, Plaintiff
below, Appellant,

v.

John Preston ROOKS, Defendant
below, Appellee.

Supreme Court of Delaware.

Submitted Nov. 15, 1978.

Decided April 25, 1979.

Merritt Burke III, Deputy Atty. Gen., Georgetown, for plaintiff below, appellant.

Robert C. Wolhar, Jr., of Wolhar & Moore, Georgetown, for defendant below, appellee.

Before HERRMANN, C. J., and DUFFY, McNEILLY and QUILLEN, JJ.

McNEILLY, Justice (for the majority):

In this first degree murder case the State appeals a pre-trial ruling of the Trial Judge declaring two statements of a previously tried co-defendant inadmissable. The first statement was found by the Trial Judge to have been involuntarily obtained by the police because it was induced by the promise of freedom from charges arising out of an unrelated pending robbery case, and by the expectation of a reward offered for information leading to the arrest and conviction of the perpetrators of the murder. The second statement was ruled inadmissable under the "fruit of the poisonous tree" concept.[1,2]

## I

During jury selection in this and a companion case consolidated for trial, a ruling was requested by defense counsel on behalf of defendant, John Preston Rooks, on the admissability under 11 *Del.C.* § 3507(a), of a statement given to the Delaware State Police by co-defendant, George Lee Reynolds.[3] The statement implicated Rooks in the murder, and defense counsel had learned that the prosecutor intended to refer to the statement during opening remarks to the jury.

An in camera hearing lasting several days was held focusing primarily on the testimony of co-defendant Reynolds and Detective Perry of the Delaware State Police pertaining to the circumstances leading to the taking of Reynolds' statement implicating Rooks.[4]

Reynolds was a suspect in a robbery which occurred near the scene of the murder-robbery of Benjamin Francis (Frank) Snyder at Snyder's store in Milton, Delaware approximately one year before the robbery. The police had no leads in the murder case, and during questioning of Reynolds about the robbery, only routinely asked Reynolds what he knew about the Snyder murder. At the mention of the murder victim's name, Reynolds appeared

---

**1.** The State filed this appeal under claim of right to do so pursuant to 10 *Del.C.* § 9902(b) which reads as follows:

"(b) When any order is entered before trial in any court suppressing or excluding substantial and material evidence, the court, upon certification by the Attorney General that the evidence is essential to the prosecution of the case, shall dismiss the complaint, indictment or information or any count thereof to the proof of which the evidence suppressed or excluded is essential. Upon ordering the complaint, indictment or information or any count thereof dismissed pursuant to the Attorney General's certification, the reasons of the dismissal shall be set forth in the order entered upon the record."

Because the jury had been sworn prior to the in camera hearing which resulted in the Trial Judge's ruling, counsel for defendant questions the propriety of this appeal under 9902(b) and cites *State v. Bowden*, Del.Supr., 273 A.2d 481 (1971). The record, however, is replete with colloquy between counsel and the Trial Judge concerning the State's objection to swearing the jury to protect the State's right of appeal under 9902(b) in the event of an adverse ruling. We are satisfied that under the circumstances of this case that swearing the jury over the State's objection did not preclude the State from pursuing this appeal as a matter of right within the scope of 9902(b).

**2.** In accepting this appeal under 10 *Del.C.* § 9902(b), we are not called upon, nor do we reach double jeopardy or other constitutional questions.

**3.** 11 *Del.C.* § 3507(a) provides:

"In a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value."

**4.** Testimony of other witnesses proffered by the State on the issue of voluntariness was excluded by the Trial Judge on the ground that its probative value would go only to the issue of reliability or trustworthiness.

to Detective Perry to become tense and to change his previously relaxed composure. Detective Perry suspected that Reynolds had some knowledge of the Snyder murder, although he did not suspect that Reynolds was a participant. Reynolds denied that he knew anything about the murder. At that time Detective Perry informed Reynolds that if he did know anything about the murder it would be to his advantage or benefit to assist the police in their investigation. Another officer placed a call to the Attorney General's office in Georgetown, and, according to Detective Perry, Reynolds was informed that the Deputy Attorney General would negotiate with him on the robbery charge if he could assist the police investigation with information about the murder. According to Reynolds' version, he was informed at the time that the Deputy Attorney General agreed that if he gave the police information leading to the arrest and conviction of the murderers he would be given a two thousand dollar reward plus his freedom from all charges in the robbery case after the murder trial was over.[5] Detective Perry testified that Reynolds then said that what he knew about the Snyder murder concerned a black man who lived in the area, but that he wanted to think about it.

According to the testimony of Detective Perry, Reynolds was seen several days later at the Sussex Correctional Institution, where he was being held in default of bond on the robbery charge. At that time Detective Perry stated that Reynolds said, "I don't want to be no snitcher" and indicated he had nothing more to say. At that, Detective Perry departed after leaving a business card and informing Reynolds that if he

wanted to talk to him, he should send word by calling the telephone number on the card. Sometime later Detective Perry received word that Reynolds wished to speak with him. Reynolds denies that he sent such a message, but after Detective Perry's arrival, he departed with Detective Perry to the Dewey Beach substation of the Delaware State Police. Reynolds' father and mother were present, and after permitting him to talk privately, Detective Perry took Reynolds' statement which is here in issue.

Reynolds basically testified that the statement in question which he gave to Detective Perry was given by him solely because of promises of freedom and reward. He also testified that the statement was false and manufactured by him from statements made to him by the interrogating officers as to the details of what occurred and who was involved. Reynolds claimed that the only part of the statement originating with him was that part which placed him in the back seat of the car involved. His testimony as to that was, "Well, I indicated myself being in the back seat. That way I wouldn't be involved in no way."

At the end of the in camera hearing the Trial Judge stated his findings of fact on the record, and concluded that Reynolds was induced to make the statement to the police because of the expectation of a reward, and being free from very serious charges. Based on that conclusion, the Trial Judge ruled the statement involuntary and inadmissable.[6]

## II

The basic procedure for admitting the statement of a witness under 11 *Del.C.* § 3507(a) is set forth in *Keys v. State,*

---

**5.** Sun Oil Company and the Milton Chamber of Commerce publicly offered a reward of $1,000. each to anyone giving information leading to the arrest and conviction of the Snyder murderers.

**6.** The Trial Judge's findings of fact and conclusions of law are as follows:

". . . you have to look at the totality of circumstances in a case of this kind. We are dealing here, as has been pointed out over and over, with a man who has an eighth-grade education and who, incidentally, reads and writes poorly. At least, he had difficulty

reading what was handed to him before me. He was in the prison charged with robbery, possession of a deadly weapon during the commission of a felony, and conspiracy. They are all serious charges. At that time I think it was true that robbery and possession of a deadly weapon during the commission of a felony carried mandatory sentences. The police officer indicated to us clearly that there was some discussion of penalties involved.

Del.Supr., 337 A.2d 18 (1975) and supplemented as to the requisite procedure for determining the voluntariness of the statement by *Hatcher v. State,* Del.Supr., 337 A.2d 30 (1975). The *Hatcher* Court also determined that the possibility of coercion by improper conduct is no less present in out-of-court statements of witnesses than it is in out-of-court confessions by defendants, and that each should be scrutinized under the same standard. The attack here is based not upon procedure but upon the substantive standard of voluntariness applied by the Trial Judge.

So here we have this young man who obviously knew he was facing a potentially heavy period of time in prison. He did not initiate discussions of Snyder. That was introduced into the whole relationship by the police officer.

When I comment in that way, I do not intend to be critical of the police officer. I am stating facts as I see them. The police officer drew certain conclusions from his reaction when Snyder was mentioned. Whatever those conclusions or however valid they were, it led the police officer to press on a little bit to explain to Reynolds his reaction and what it meant to him, that is, that he knew more about it, and so on.

Then we have the man sitting there very silent for a long time, presumably meditating on all that is being said to him. He finally comes up with this question, 'Well, what is in it for me?' Then you get the police activity, if you will. You have the other officer going to the telephone to talk to Mr. Burke. That is brought back to him. There is discussion of a reward. There is discussion of his cooperation gaining police cooperation. There is discussion that he might even be released.

I do not think the State here can really deny that that was suggested, that is, that if he was totally cooperative that he would get almost complete relief. Let's face it. We all know what we are talking about. We are talking about a brutal murder, and this was a year and half later, or whatever the period was, and there was no one even indicted. Here is a man who is beginning to say things about it when he is hung up on a robbery. I think it is logical that the State would be willing to do whatever they could for him. It makes a lot of sense from the State's standpoint at that juncture. So I do not have any doubt but that things were said.

Officer Perry said, 'We made no promises.' I suspect he, being a good police officer, probably did not make a promise. But here he is an experienced, trained, intelligent, educated policeman talking to a young man like I am talking about with the pressures that were on him in prison. The problem is not so much what Perry thought he was saying to the man. It is what Reynolds was receiving as a result.

What did he receive? On two, three or however many occasions there were discussions about a reward, discussions about cooperation, and discussions about getting him on the street. The family was contacted. The same kind of discussions were had at that end. Letters were coming into the prison.

There was a long gap of time, incidentally, between the initiation of this notion that if he could help, something might happen, and the statements. There was a gap from the 13th of February, when it first happened, all the way up until the 28th of March before anything serious was developed. You have a man in prison thinking about all these things all that time and facing what he was facing.

Frankly, I do not look upon this problem presented here as one that can be resolved with a decision as to whether or not a lawyer should have been present or whether or not he was a suspect or just a prospective witness. I think they are side issues. They can be and are important in many cases, but in this case I do not think they are really important to a final decision and, that is, whether or not this man Reynolds was induced to make his statements, whether they were true or false. Was he induced to make them because of the expectation of a reward and being free from very serious charges?

I sat here and watched him, and I heard his testimony. He was examined in great detail. He was cross-examined in great detail. I am convinced that he believed that. He actually believed, and he strained to get there, to give the police something to go on that would try to keep him out of it, but at the same time gain him this freedom that he obviously wanted. The freedom probably was much more important than the two thousand-dollar reward.

Having reached that conclusion—and somewhat reluctantly I might add, because, for all I know, what he told the police was packed full of truth—my reluctant conclusion is that the statement of the 28th was not voluntarily given, and that you cannot separate the statement of the 28th from the statement of the 31st—the fruits-of-the-poisonous-tree concept does pertain—and that neither statement was voluntary in the sense required in the statute."

The defendant relies heavily upon *State v. Donovan*, Del.Ct. O & T., 8 A.2d 876 (1939) and *State v. Priest*, Del.Super., 193 A.2d 593 (1963). In *Priest* the defendant quotes the Court stating:

"Oral or written statements of guilt, obtained by promise or hope of benefit or reward in the nature of an inducement to speak, are inadmissable because they are not considered to have been made freely and voluntarily" (citations omitted)

From *Donovan* defendant quotes the test of voluntariness as being:

". . . whether what was said to the prisoner induced a belief that a confession would place him in a better condition than he was before the confession; which would be holding out to him a real benefit."

Taken out of context the language quoted from *Priest* and *Donovan* appears to support the Trial Judge's ruling. A review of the decisions in both *Priest* and *Donovan*, however, may indicate the contrary, depending upon further clarification of the Trial Judge's ruling on the remand hereinafter directed by this opinion.

In *Priest*, the defendant in a robbery case, on *voir dire* testified that he was arrested and interrogated by the police only on auto larceny charges and when asked about the robbery he denied any knowledge of it. He further testified that later he signed a statement which had been prepared out of his presence, the text of which he did not see or read and which was covered by a book. At the time he thought he was signing the statement about the auto thefts and on the basis of a statement made to him to the general effect, "don't worry about a thing we'll take care of everything." The police testimony was in sharp conflict. The Court ruled the statement voluntary as a matter of law and submitted the factual determination of the issue to the jury under *Wilson v. State*, Del.Supr., 109 A.2d 381 (1954).

In *Donovan* the accused was a girl eighteen or nineteen years old who had been informed that if she stuck to her story she was taking a chance of being hanged, and who was later told, "if you want to tell us about it, tell us about it, and if there is anything I can do for you I will do it." The Court held the confession thereafter given to be admissable and the police tactics proper.

In the *Priest* opinion the Court stated:

"The Court is of opinion, based on its reading and study of *Wilson v. State*, 10 Terry 37, 109 A.2d 381 (Sup.Ct.1954), that it was required to rule on the admissibility of the oral admission and written confession to determine if they were given under circumstances which would demonstrate any impropriety on the part of the officers in obtaining such evidence, thus making them inadmissible, and that the record shows it did so. The Court was unable, as a matter of law, to find from the evidence that the statement and confession were given because of the use of any improper methods."

"The *Wilson* case has subsequently been interpreted by the Supreme Court and this Court to mean that unless the trial judge can conclude, as a matter of law, that the statement was improperly induced, it should admit the statement and allow the jury to pass upon this issue."

In *State v. Winsett*, Del.Super., 238 A.2d 821 (1968), then Chancellor, now Justice Duffy, laid down the guidelines for the determination of voluntariness which this Court has approved and followed.

"To be voluntary, a statement, written or oral, must have been given without duress or coercion. It must have been given free of any promises or threats by others. A statement which was prompted by mental or physical coercion, or by duress or intimidation, is not voluntary because it was not the product of a free will. Cf. *State v. Winsett*, Del., 205 A.2d 510, 520 (1964)."

"The question in each case is whether defendant's will was 'overborne' at the time he made the statement. *Lynumn v. State of Illinois*, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963). If in fact defendant's will was overborne, or if the

statement was not the product of a rational and intelligent free will, it was not voluntarily made because it was coerced. *Payne v. Arkansas*, 356 U.S. 560, 566, 78 S.Ct. 844, 2 L.Ed.2d 975, 980 (1958). *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)."

"The judgment must be based on the 'totality of the circumstances,' *Blackburn v. State of Alabama*, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960). Factors which bear on these circumstances include the following: defendant's age and mental condition (whether he was 'dull,' for example), whether he was denied a hearing before a magistrate, whether he was advised of his right to remain silent or his right to counsel, whether he was held incommunicado and if so how long, whether he was denied food for long periods, whether there were any threats of mob violence, the legality of his arrest, *Payne v. State of Arkansas*, supra; defendant's educational background and experience, his emotional stability or lack thereof, his record as to former crimes, whether the police used subterfuge in obtaining the statement, whether the statement was composed by a police officer, whether defendant had the aid of counsel or relatives or friends, whether there was prolonged police questioning of defendant."

In the United States Supreme Court's most recent opinion dealing with inculpatory statements Mr. Justice Stewart, delivering the opinion of the Court, wrote, *inter alia*:

But *any* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law "even though there is ample evidence aside from the confession to support the conviction." (citations omitted) If, therefore, Mincey's statements to Detective Hust were not "the product of a rational intellect and a free will," (citations omitted) his conviction cannot stand.

$$* \quad * \quad * \quad * \quad * \quad *$$

There were not present in this case some of the gross abuses that had led the

Court in other cases to find confessions involuntary, such as beatings, see *Brown v. Mississippi*, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682, or "truth serums," see *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770. But "the blood of the accused is not the only hallmark of an unconstitutional inquisition." *Blackburn v. Alabama*, 361 U.S., at 206, 80 S.Ct. at 279. Determination of whether a statement is involuntary "requires more than a mere color-matching of cases." *Reck v. Pate*, 367 U.S. 433, 442, 81 S.Ct. 1541, 1547, 6 L.Ed.2d 948. It requires careful evaluation of all the circumstances of the interrogation. *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, at 2416–8, 57 L.Ed.2d 290 (1978).

■ Historically, the Delaware cases have included within the guidelines for testing the voluntariness of a statement given to police that "it must have been given free of any promises." Equally as historical has been the failure of our courts to give literal application to that language in the initial determination of voluntariness by the court on *voir dire*. Promises or inducements are material to the issue of reliability or trustworthiness, and do not make a statement involuntary, unless so extravagant, or so impressionable as to overbear the person's will and rational thinking processes. Promises of witness immunity, and promises made as a result of plea bargaining, are only two examples of essential prosecutorial tools which, if proscribed, would open the door to unchecked and uncheckable crime. That is not to say that the court should not consider promises in its determination of voluntariness. But the attention of the Trial Judge must be focused on a "totality of circumstances" overview of the behavior of the interrogators and the mental/physical make-up of the individual being interrogated. This must be done on a case by case basis, to reach an ultimate determination on the *voir dire* record, as to whether the behavior of the interrogators was such as to overbear the will of the interrogated to resist and bring about a statement not "the product of a rational intellect and a free

will" without regard to the truthfulness or reliability of the statements. *Rogers v. Richmond*, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961). This determination requires proof of voluntariness by the State by at least a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 627, 30 L.Ed.2d 618 (1972).

■ This State follows, with respect to statements of prospective criminal case witnesses as well as confessions by defendants, what was described in *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) as the Massachusetts rule, under which the judge hears all the evidence and rules on voluntariness before allowing a confession into evidence; if he finds the confession voluntary the jury is instructed that it must also find that the confession was voluntary before it may consider it. Because of our decision to remand in this case, it is appropriate and interesting to note the comments of the *Jackson v. Denno* Court, 84 S.Ct. at 1781 n.8, pertaining to the Massachusetts rule:

> "We raise no question here concerning the Massachusetts procedure. In jurisdictions following this rule, the judge hears the confession evidence, himself resolves evidentiary conflicts and gives his own answer to the coercion issue, rejecting confessions he deems involuntary and admitting only those he believes voluntary. It is only the latter confessions that are heard by the jury, which may then, under this procedure, disagree with the judge, find the confession involuntary and ignore it. Given the integrity of the preliminary proceedings before the judge, the Massachusetts procedure does not, in our opinion, pose hazards to the rights of a defendant. While no more will be known about the views of the jury than under the New York rule, the jury does not hear all confessions where there is a fair question of voluntariness, but only those which a judge actually and independently determines to be voluntary, based upon all of the evidence. The judge's consideration of voluntariness is carried out separate and aside from issues of the reliability of the confession and the guilt or innocence of the accused and without regard to the fact the issue may again be raised before the jury if decided against the defendant. The record will show the judge's conclusions in this regard and his findings upon the underlying facts may be express or ascertainable from the record.

> Once the confession is properly found to be voluntary by the judge, reconsideration of this issue by the jury does not, of course, improperly affect the jury's determination of the credibility or probativeness of the confession or its ultimate determination of guilt or innocence."

### III

We turn now to the disposition of this case based upon the facts outlined in this opinion, as they appear in the record, and the Trial Judge's conclusions of law and fact leading to his finding that the statement in issue was involuntarily given and inadmissible in evidence at trial.

■■ This Court will not disturb conclusions of fact made by the Trial Judge when supported by competent evidence. But in concluding that the statement was induced by the expectation of a reward and freedom, the Trial Judge failed to reach the crucial issue of whether those inducements, under the totality of circumstances resulted from behavior of the State's law enforcement officers which was such as to overbear the witnesses' will to resist and bring about a statement not freely self-determined under the standards of *State v. Winsett, supra*, and *Mincey v. Arizona, supra*. The Trial Judge's conclusion that he did not intend to be critical of the police, that there was a long gap of time between "discussions" with the police about a reward, cooperation, and getting Reynolds back on the street, that during the lapse of time between interrogation and statement, Reynolds "strained . . . to give the police something to go on that would keep him out of it or give him an alibi," appear to be conclusions that Reynolds' will was not overborne by the police and that the state-

ment given was the product of a rational mind and free will. In light of these comments and the distinctions we draw between the judge-jury issue of voluntariness and the jury issue of reliability, we find it appropriate to remand this matter for reconsideration.

\* \* \*

If, upon reconsideration, the Trial Judge reverses his previous ruling, this appeal will become moot. If the previous ruling is reaffirmed, it is requested that the Trial Judge submit his reasons to this Court within thirty days from the date of this opinion for further review, jurisdiction being reserved for that purpose.

DUFFY, Justice (concurring):

I concur in the judgment of the Court ordering a remand to the Superior Court, but I write separately because my analysis differs somewhat from that of the majority.

First, as to jurisdiction, I agree that the State has a statutory right of appeal under 10 *Del.C.* § 9902(b). Given the special circumstances of this case (in which the Trial Judge ordered the jury sworn over the State's objection), I would construe the "before trial" requirement of § 9902(b) to mean before the presentation of evidence to the jury. Since the Trial Court's order was entered before that event, the State has a right to appeal.[1]

Second, as to the substantive issue, all of the significant Delaware case law concerning the "voluntariness" of a statement used in a criminal case involved a statement given by a defendant in the case. The settled test for the admission of such a statement required the State to show, among other things, that the statement had been given "free of any promises . . . by others." See, for example, *State v. Winsett*, Del.Super., 238 A.2d 821 (1968), aff'd Del.Supr., 251 A.2d 199 (1968).

In announcing the test for voluntariness to be applied under 11 *Del.C.* § 3507(a), that is, to a statement given not by a defendant but by a third person, this Court adopted the same test used when the State offers in evidence a statement given by a defendant. *Hatcher v. State*, Del.Supr., 337 A.2d 30 (1975). It now seems to me, however, that this is too broad and should be modified. In saying this, I emphasize that we are concerned here with a statement given by a witness, not with a statement given by a defendant.

In my view, the requirement that a § 3507(a) statement be "voluntary" should not include a requirement that it have been given "free of any promise" by another. Such a condition, at least in the context of this case, goes to the reliability or trustworthiness of the statement, rather than to its voluntary character. Such factors as those are, of course, relevant to the jury consideration of the case. "Promises" such as the expectation of a reward or a promise of leniency arising out of a plea bargain are material to the issue of reliability or trustworthiness but do not, in my judgment, make a statement involuntary (and thus inadmissible) as a matter of law under § 3507(a). There is one important caveat, however: if the promise was so extravagant or made such an impression upon the witness that, under the totality of the circumstances, his will was "overborne," then of course the statement is involuntary and thus inadmissible. *Hatcher v. State, supra; State v. Winsett, supra.*

In his findings and rulings, the Trial Judge did not draw the distinction which I think is called for under § 3507(a) between reliability of the statement given by the witness and the voluntary nature of that statement. Accordingly, I think that a remand is necessary.

---

1. The appeal presents an important question of procedure governing the admission, under 11 *Del.C.* § 3507(a), of a statement by a witness. Construing § 9902(b) to permit the State to appeal (as of right) the Trial Court's ruling on § 3507(a) does not require any consideration of a double jeopardy issue. As to that, see *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 2161, 57 L.Ed.2d 24 (1978).